IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
**Chief Judge Wiley Y. Daniel**

Civil Action No.  10-cv-02522-WYD

In re:

TRACEY BROADCASTING CORPORATION,

     Debtor.

VALLEY BANK AND TRUST CO.,

     Appellant.

v.

SPECTRUM SCAN, LLC and

JOLI A. LOFSTEDT, Chapter 11 Trustee,

     Appellees.

---

## AMENDED ORDER

---

I.    <u>INTRODUCTION</u>

THIS MATTER comes before the Court on the appeal by Appellant Valley Bank and Trust Co. ("Valley Bank") from an order issued by the Bankruptcy Court made in Adversary Proceeding number 10-01130-ABC.  This appeal arises from the Bankruptcy Court's September 30, 2010 Order Granting Plaintiff's Motion for Summary Judgment and Denying Defendant's Motion for Summary Judgement, which was amended on October 19, 2010 ("Order").  In the Order, the Bankruptcy Court concluded that Valley Bank does not have a security interest in Tracey Broadcasting Corporation's ("Debtor" or "Tracy Broadcasting") Federal Communications Commission ("FCC") broadcast

license ("License") or any proceeds derived from a further transfer of the License pursuant to 11 U.S.C. § 552(a).

Valley Bank asserts that the Bankruptcy Court's Order errs in four major respects: (1) Debtor's private right to accept compensation for a transfer of its broadcast License is a "general intangible" in which Valley Bank perfected a security interest, thus, § 552(a) is no bar to enforcing Valley Bank's security interest if the Trustee sells the License postpetition; (2) the Bankruptcy Court's Order confuses § 552(a) with § 552(b); (3) the Bankruptcy Court's Order errs in assuming the FCC's clear approval of security interests taken in a broadcast licensee's private right to accept compensation for the transfer of its broadcast license; and (4) the Bankruptcy Court's Order errs in mentioning, but not fully rejecting, case authority "that fail[s]l to recognize FCC approval for security interests in private rights associated with FCC licenses and refuse[s] to enforce such security interest on that basis."  (Valley Bank's Opening Br. at 11, ECF No. 13.)

For the reasons stated below, I am not persuaded by Valley Bank's arguments and affirm the Order of the Bankruptcy Court.

II.    BACKGROUND

The relevant material facts are undisputed.  Debtor Tracy Broadcasting Corporation is a Nebraska Corporation that operated a radio station, known as KMOR 92.9 FM, or KOLT ("KOLT"), at Warren AFB in Wyoming.  Debtor operated KOLT under a FCC broadcast License.

Prior to filing its bankruptcy case, on or about May 5, 2008, Debtor obtained a

loan from Valley Bank in the principal amount of $1,556,100.00 (the "Loan").  In connection with the Loan, Debtor executed a Promissory Note (the "Note") dated May 5, 2009.  The Note was secured by a Commercial Security Agreement (the "Security Agreement"), executed by the Debtor and dated December 13, 2007.  Under the Security Agreement, Valley Bank was granted a security interest in, among other things, the Debtor's "general intangibles" and proceeds thereof.

Valley Bank filed UCC-1 Financing Statements (the "Financing Statements") regarding the security interest granted to Valley Bank under the Security Agreement with the Secretaries of State for Colorado, Nebraska, and Wyoming.  The Financing Statements listed the Debtor's "general intangibles" and proceeds, among other property, as Valley Bank's collateral.

On January 23, 2009, Spectrum Scan, LLC ("Spectrum") obtained a judgment against the Debtor in the original principal sum of $1,400,000.  On August 19, 2009, Debtor filed a petition for relief under Chapter 11 of the Bankruptcy Code.  At the time the Chapter 11 petition was filed, the Debtor had no pending agreement for sale or transfer of the License.  On February 16, 2010, the Bankruptcy Court entered an order appointing the Trustee as Chapter 11 trustee of the Debtor's estate.

Valley Bank filed a secured claim in the underlying bankruptcy case in the amount of $910,000.  Spectrum, an unsecured creditor in Debtor's Chapter 11 bankruptcy case, commenced the subject adversary proceeding for a determination of the extent of Valley Bank's security interest.

The parties agree that Valley Bank has no valid security interest in the Debtor's

FCC License itself.  Thus, in its Order, the Bankruptcy Court determined that the issue

at hand is whether Valley Bank's security interest extends to "proceeds" received by the

Trustee upon a future transfer of the Debtor's interest in the FCC License, where there

was no contract for transfer of the License in existence at the time the Chapter 11

petition was filed.  (Bankruptcy Court's Order at 2, Bankruptcy Case No. 10-01130 ECF

No. 44.)  In its Order, the Bankruptcy Court concluded that 11 U.S.C. § 552(a) of the

Bankruptcy Code prohibits Valley Bank's security interest from encumbering any value

that the estate may receive from any future transfer of the License.  (Bankruptcy Court's

Order at 8.)  Valley Bank now appeals the Bankruptcy Court's ruling.

III.   ANALYSIS

    A.   Standard of Review

      On appeal, I may affirm, modify, or reverse the Bankruptcy Court's order, or

remand with instructions for further proceedings.  *Kimco Leasing, Inc. v. Knee,* 144 B.R.

1001, 1005 (N.D.Ill. 1992).  I must review the findings of fact under a "clearly erroneous"

standard.  *Id.*  A "finding of fact is clearly erroneous if it is without factual support in the

record or if, after a review of all the evidence, we are left with the definite and firm

conviction that a mistake has been made."  *In re Davidovich*, 901 F.2d 1533, 1536 (10th

Cir. 1990).  I must review the Bankruptcy Court's conclusions of law, on the other hand,

*de novo.  Id.*  "The burden of proof is on the party seeking to reverse a bankruptcy

court's holding."  *In re Johnson*, 236 B.R. 510, 518 (D.C.Cir. 1999).  "That party must

show that the court's holding was clearly erroneous as to its assessment of the facts or

erroneous in its interpretation of the law, and not simply that another conclusion could

have been reached." *Id.*  Since the facts are undisputed and thus, this is a question of

law, I must conduct a *de novo* review of the Bankruptcy Court's conclusions of law.

> B.      Whether the Bankruptcy Court Erred in Ruling that (1) the Debtor's Right
> to Receive Compensation or Value for the Transfer of its License Did Not
> Exist Before the Bankruptcy Case was Filed and that (2) Any
> Compensation Debtor's Estate May Receive for the Transfer of the
> License Will Not be Proceeds of Pre-petition Property as Defined in 11
> U.S.C. § 552(a) Because a Contract for Receipt of Such "Proceeds" Was
> Not Negotiated and/or FCC-Approved Pre-petition

In the pending appeal, Valley Bank argues that the Bankruptcy Court committed

reversible error when it ruled that 11 U.S.C. § 552(a) bars enforcement of Valley Bank's

security interest in Debtor's private right to accept compensation for the transfer of its

License.  Essentially, Valley Bank asserts that the Debtor's right to petition for FCC

approval and sell its License to a third party "existed prior" to the filing of the bankruptcy

petition.  (Opening Br. at 11-13.)  Thus, § 552(a) does not apply because it "only avoids

liens on property the debtor acquired after filing for bankruptcy protection."  (Opening

Br. at 12.)

Initially, I turn to 11 U.S.C. § 552(a) of the Bankruptcy Code.  Section 552(a)

provides:

> (a) Except as provided in subsection (b) of this section, property acquired
> by the estate or by the debtor after the commencement of the case is not
> subject to any lien resulting from any security agreement entered into by
> the debtor before the commencement of the case.

*See United Sav. Ass'n of Texas v. Timbers of Inwood Forest Assocs., Ltd.*, 484 U.S.

365, 374 (1988) (interpreting § 552(a) to mean that "a prepetition security interest does

not reach property acquired by the estate or debtor postpetition."); *see also* 5 Collier on

Bankruptcy ¶ 552.01 (Alan N. Resnick & Henry J. Somme eds., 16th ed.).  "Section

552(b) sets forth an exception, allowing postpetition proceeds, product, offspring, rents,

or profits of the collateral to be covered only if the security agreement expressly

provides for an interest in such property, and the interest has been perfected under

applicable nonbankruptcy law."  *Timbers*, 484 U.S. at 374 (internal quotation marks

omitted).  Thus, pursuant to this statue, a prepetition secured lender has a lien on

postpetition proceeds generated by the sale of property only if the lender also had a

prepetition lien on the property that was sold.  *Id.*

The Bankruptcy Code does not contain a definition of "proceeds."  Accordingly,

most courts that apply § 552(b) refer to the definition of "proceeds" in the UCC.  *In re*

*Bumper Sales, Inc.*, 907 F.2d 1430, 1437 (4th Cir. 1990).  Section 9-102(a)(64) of the

UCC provides that "proceeds" means the following property:

> (A) whatever is acquired upon the sale, lease, license, exchange, or
> other disposition of collateral;
> (B) whatever is collected on, or distributed on account of, collateral; [or]
> (C) rights arising out of collateral. . . .

In its Order, the Bankruptcy Court noted the differing approaches taken by

various courts in addressing this issue:

> The distinction between "after-acquired property," and "proceeds" of
> pre-petition property is sometimes not a clear one.  Such is the case here.
> In the most simple analysis, anything received by the Debtor on account of
> a transfer of the License post-petition would not be "proceeds" under the
> UCC because the License itself could not be pledged as "collateral."  If
> there is no security interest in the property itself, the argument goes, there
> can be no security interest in any "proceeds" thereof, because there is no
> disposition of "collateral."  This is essentially the position taken by the
> district court in *In re Tak Communications, Inc.*, 138 B.R. 568, 577 (W.D.
> Wis. 1992) when it stated that, "[T]he banks' 'limited' security interest in

> the proceeds from the sale of the license does not exist because the banks seek essentially to place a lien on the licenses, and that is not permitted by the FCC."
>
> The contrary approach, illustrated by the case of *In re Media Properties, Inc.*, 311 B.R. 244 (Bankr. W.D. Wisc. 2004), is that value received by the transferor of an FCC license, on account of the transfer of the license, is proceeds of the transferor's general intangible represented by the transferor's "private right" in the FCC license. In other words, such value is proceeds of the transferor's right to receive remuneration upon a future FCC-approved sale of its license. 311 B.R. at 249.

(Bankruptcy Court's Order at 7.)  In a detailed and thorough analysis, the Bankruptcy Court "presumed [that] it is possible to grant a security interest in the ability to receive value upon an FCC-approved sale of a broadcast license."  (Bankruptcy Court's Order at 7.)  Thus, it found the approach set forth in *In re Tak* unhelpful as applied to this case. Instead, the Bankruptcy Court determined that the Debtor's ability to receive value from an FCC-approved sale of its License was "contingent both on the existence of an agreement to transfer the License and upon the FCC's approval of that transfer." (Bankruptcy Court's Order at 7.)  Here, given that "there was in fact no agreement of any kind for transfer of the License prior to the filing of the" bankruptcy petition, Debtor's ability to receive value is "property" acquired after the commencement of the bankruptcy case.  Therefore, the Bankruptcy Court determined that § 552(a) prevents Valley Bank's security from extending to any such value received by the Debtor as a result of any eventual sale of the License post-petition.  (Bankruptcy Court's Order at 7-8.)

In its Order, the Bankruptcy Count went on to explain that it disagrees with the analysis of the *Media Properties* case.

The Debtor's right to receive value for a transfer of its License did not exist

prior to the filing of its Chapter 11 case because any such "right" was too remote and was subject to two contingencies. *See, Sims v. Jamison*, 67 F.2d 409 (9th Cir. 1933) (if future earnings can be said to have a potential existence, they are the subject of an agreement for a lien; but the lien does not attach until the wages come into existence). First, the Debtor would have to have an agreement to transfer the License, and second, the transfer would have to be approved by the FCC. Since neither contingency had occurred pre-petition (and, indeed, neither has occurred to date), the Debtor did not have a sufficient property interest in this contingency in order to transfer a security interest in it to the Bank. If such an agreement to transfer the License occurred and was approved by the FCC post-petition, the Bank's security agreement could attach to any fruits of such transfer, but for § 552(a)'s prohibition on security interests in after-acquired property.

(Bankruptcy Court's Order at 8.)

Turning to my analysis, I find that the Bankruptcy Court's conclusions are well-supported by both the Bankruptcy Code and decisions from other circuits. Importantly, I could not find any controlling Tenth Circuit precedent on this issue, thus, I find it appropriate that the Bankruptcy Court looked to other circuits for guidance. I further note that Valley Bank's arguments rely solely on non-controlling authority from other circuits. After carefully reviewing the relevant documents, I find that Valley Bank's reliance on contrary interpretations of this issue (and related issues) from other jurisdictions to be unavailing.[1] Based on my review of the Bankruptcy Court's Order, I

---

[1] I note that Valley Bank makes a related argument that it has a security interest in the post-petition proceeds invoking the U.C.C. Neb. Rev. Stat. U.C.C. § 9-408. I reject this argument as Neb. Rev. Stat. U.C.C. § 9-408 expressly states that it does not override federal law to the contrary. Federal law contradicts Valley Bank's attempt to obtain a security interest in the License and/or the Proceeds, particularly without express FCC approval. *See* 47 U.S.C. § 301 (providing that an FCC license is granted for use but does not convey any ownership rights); *In re Cheskey*, 9 F.C.C.R. 986, 987 (1984) (stating that the FCC has a policy against a licensee giving a security interest in a license because the FCC's statutory mandate requires it to approve the qualifications of every applicant for a license).

am not convinced that there has been an erroneous interpretation of the law.  I find that Valley Bank has failed to meet its burden of proof to reverse the Bankruptcy Court's Order.  Simply put, Valley Bank has not shown that the Bankruptcy Court erred in its interpretation of the law.  Instead, Valley Bank puts forth cases from other jurisdictions that have reached alternative conclusions.  While I recognize that Valley Bank has adopted a different interpretation of the split of authority than the Bankruptcy Court, this is not grounds for reversal.  I find that under § 552(a), in the context of this bankruptcy case, Valley Bank does not have a security interest in Debtor's License or any proceeds derived from a future transfer of the License.  Based on the record before me, I find that the Bankruptcy Court examined the arguments of both parties along with the relevant law, and made sound and well-reasoned findings.

      C.   <u>Valley Bank's Remaining Challenges</u>

      Finally, I reject Valley Bank's remaining challenges that the Bankruptcy Court committed error by (1) stating that "there has been no definitive ruling from the FCC itself" regarding whether a licencee can pledge its purported "private right" and (2) discussing, but not rejecting, the reasoning and holding of *In re Tak Communications, Inc.*

      As to Valley Bank's argument that the Bankruptcy Court erred in stating that "there has been no definitive ruling from the FCC itself," Valley Bank cites a number of FCC rulings in support of its argument that a licensee may pledge its "private right" to a license's proceeds as collateral for a loan.  (Opening Br. at 21.)  In reviewing the context of this statement in the Bankruptcy Court's Order, I do not find that it rises to the level of

error.  The Bankruptcy Court did not base its decision on this statement or even

specifically address this issue.  In fact, the Bankruptcy Court acknowledged "that it is

possible, at least in the absence of a bankruptcy, for a debtor to grant a security interest

in its right to receive proceeds upon an FCC-approved transfer of its license."

(Bankruptcy Court's Order at 6.)  Thus, I find that the Bankruptcy Court's statement that

Valley Bank is challenging is not material to the Order.  Moreover, I note that the FCC

materials cited by Valley Bank emphasize that FCC approval is required before

creditors can perfect a security interest in the private right of the proceeds from the sale

of an FCC broadcast license.  *See In re Beach Television Partners*, 38 F.3d 535, 537

(11th Cir. 1994); *In re Application of Welch*, 3 F.C.C. Rcd. 6502, 6503 (1988); *In re

Atlantic Business and Community Development*, 994 F.2d 1069, 1074 (3rd Cir. 1993);

Since the required FCC approval did not occur in this case, I find this authority

distinguishable to the case at hand, and thus, I reject Valley Bank's argument that the

Bankruptcy Court erred with respect to this issue.

Second, Valley Bank argues that the Bankruptcy Court erred in "acknowledging

but refusing to reject" the reasoning and holding of *In re Tak Communications, Inc.*, 138

B.R. 568, 577 (W.D. Wis. 1992).  (Opening Br. at 29.)  Similar to the previous challenge,

I find that the Bankruptcy Court's Order is not based on *In re Tak,* thus, I reject Valley

Bank's contentions.  After reviewing the numerous cases cited by Valley Bank with

respect to this issue, I find that they are neither controlling on this Court nor applicable

to the facts of this bankruptcy case.  Instead the cases concern specific factual

scenarios that are not present here.  (*See* numerous cases cited in Opening Brief at 29-

35.)  Again, since the Bankruptcy Court did not base its Order on *In re Tak* and since the FCC never approved a sale of Debtor's FCC License to Valley Bank, I reject Valley Bank's argument that the Bankruptcy Court erred with respect to this issue.

Accordingly, I find that there is no evidence in the record of any error with respect to the Bankruptcy Court's holding that § 552(a) of the Bankruptcy Code prohibits Valley Bank's security interest from encumbering any value that the estate may receive from any future transfer of the Debtor's FCC License.

IV.  <u>CONCLUSION</u>

Based on the foregoing, it is

ORDERED that Valley Bank's appeal of the Bankruptcy Court's September 30, 2010 Order, which was amended on October 19, 2010, holding that Valley Bank does not have a security interest in Debtor's License or any proceeds derived from a future transfer of the License is without merit.  Accordingly, the Bankruptcy Court's September 30, 2010 Order, amended on October 19, 2010, is **AFFIRMED**, and this appeal is **DISMISSED.**

Dated:  September 1, 2011

BY THE COURT:

s/ Wiley Y. Daniel
Wiley Y. Daniel
Chief United States District Judge